FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 20 2010

Stephan Harris, Clerk
Cheyenne

Gary T. Dance, WSB No. 6-2852
Julian E. Gabiola, Admitted Pro Hac Vice
David J. Dance, Admitted Pro Hac Vice
MOFFATT, THOMAS, BARRETT, ROCK &
FIELDS, CHARTERED
412 West Center
Post Office Box 817
Pocatello, Idaho 83204
Telephone (208) 233-2001
Facsimile (208) 232-0150
gtd@moffatt.com
14300.0111

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| VAN L. HALE,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIED INSURANCE, NATIONWIDE INSURANCE, and John Does 1-3<br><br>Defendant. | Case No. 09CV-245J<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This suit arises out of Allied Insurance and Nationwide Mutual Insurance Company (hereinafter collectively referred to as "Nationwide") denial of coverage to Van Hale for injuries suffered while riding on the front of an off-road recreational vehicle in an attempt to

act as a counterbalance so that the off-road vehicle could climb a steep slick rock embankment on a 4x4 trail near Moab, Utah. Hale's policy with Nationwide excluded coverage for bodily injury that was inflicted while on a vehicle designed primarily for off-road use while not on a public road. After conducting an investigation into the circumstances of the accident, reviewing the relevant provisions of the policy, and a consideration of relevant law, Nationwide determined that the occurrence leading to Hale's injuries was precluded from coverage and denied his claim. Hale, in turn, filed suit claiming that such a denial and investigation was a breach of contract and amounts to bad faith. There is no genuine issue of material fact that this occurrence is precluded from coverage under the policy, nor is there a genuine issue of material fact that the relevant policy provisions are consistent with Wyoming law and public policy. There is also no genuine issue of material fact that there was a reasonable basis for denying the claim. Finally, there is no genuine issue of material fact that the investigation concerning coverage was reasonable and done in good faith. Accordingly, Nationwide is entitled to judgment as a matter of law in this instance.

## II. STANDARD

It is well established that a district court may grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The initial burden lies with the moving party to inform the court of the basis for its motion." *Wallace v. United States*, 2009 WL 6317440 *2 (D. Wyo. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant has initially established that there is no genuine issue of fact, the burden shifts to the

non-moving party to prove, through specific facts, that a triable issue does exist. *Id.* (citing *Matsushita Elec. Co. v. Zenith Radio*, 475 U.S. 574 (1986)).

When determining whether summary judgment is appropriate the Court must view the evidence in the light most favorable to the non-moving party. *Id.* "Nevertheless, the nonmoving party must present more than 'mere assertions and conjecture' to withstand a summary judgment motion." *York v. Am. tel. & Tel. Co.*, 95 F.3d 948, 955 (10th Cir. 1996). Likewise, "[t]he mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Lawnmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir. 1997). In sum, summary judgment is appropriate when the non-movant is unable to present facts on which a reasonable jury could find in his or her favor. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006).

## III. STATEMENT OF FACTS

Van Hale is a Chiropractor practicing in Afton, Wyoming. Nationwide is an insurance company with its principle place of business in Columbus, Ohio. Allied Insurance is a subsidiary of Nationwide.

Hale obtained an automobile policy with Nationwide Mutual Insurance Company to insure his four vehicles. Affidavit of Gary Dance ("Dance Aff.", Exh. A. Among other things, this Policy contained an uninsured motorist provision. Dance Aff. Exh. A. Pursuant to the Declarations Sheet's Coverage and Limits of Liability this policy had coverage limits of $100,000 per person and $300,000 per accident. Dance Aff., Exh. A. The Declaration Sheet also indicates that Hale had coverage limits of $25,000.00 for medical payments.

The uninsured motorists provision provides in pertinent part: "We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or

operator of an 'uninsured motor vehicle' because of bodily injury." Dance Aff., Exh. A. The policy then goes on to define what is and is not an "uninsured motor vehicle." Specifically, the policy states:

> However, "uninsured motor vehicle" does not include any vehicle or equipment:
>
> 5. Designed mainly for use off public roads while not upon public roads.

Dance Aff., Exh. A.

The Uninsured Motorists Coverage Endorsement also includes a provision limiting liability. Specifically it provides:

> A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> This is the most we will pay regardless of the number of
>
> 1. "Insureds";
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations[.]
>
> . . . .
>
> No "insured" shall be entitled to recover payment in excess of damages sustained.

Dance Aff., Exh. A.

The Medical Payments Coverage provision states:

> A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"
>
> 1. Caused by accident; and
>
> 2. Sustained by an "insured"; and
>
> 3. Arising out of the ownership, maintenance or use of a motor vehicle or "trailer".
>
> B. "Insured" as used in this Part means:
>
> 1. You or any "family member":
>
> a. While occupying"; or
>
> b. As a pedestrian when struck by;
>
> a motor vehicle designed for use mainly on public roads or a trailer of any type.

Dance Aff. Exh. A.

On March 28, 2009, Hale and his family were on vacation near Moab, Utah. Dance Aff., Exh. B. Hale and his family were in an area known as the Sand Flats Recreational Area. Dance Aff., Exh. B. In order to have access to the Sand Flats Recreational Area, users must pay a fee and follow the rules and regulations of the Bureau of Land Management. Dance Aff., Exh. C. Those using the Sand Flats Recreational area are repeatedly warned that "[r]iding on public lands is a privilege, not a right." Dance Aff., Exh. C.

On March 28, 2009, Hale was with a group of friends and family riding off-road recreational vehicles on what is known as the "Fins & Things 4x4 Trail." Dance Aff., Exh. C. The Grand County Sheriff's Office most aptly described what transpired next in its Incident Report:

> Van was riding ATV's in the "Fins and Things" 4x4 trail south and west of camp cluster F in the Sand Flats area near Moab, Utah. Van and crew were riding the trail in reverse fashion as they

> started at camp cluster F rather than the normal trail start at cluster E. The trail makes an abrupt change in the terrain when the sandy road bumps up against a slick rock fin, crossing the slick rock fin then back to a sandy road.
>
> As the sandy road turns into sand stone there is a very steep climb that is required and vehicles are often in need of assistance in getting up it. Oft times 4x4's are winched up or assisted in other ways to overcome this obstacle.
>
> Van was assisting a two wheel drive ATV up this embankment by sitting/hanging onto the front rack of the ATV to create a counter weight and keep the ATV from overturning. The ATV started up the embankment with Van attached to the front of the machine, struggling as they do, when all of the sudden the ATV gained traction causing Van to be thrown over the ATV landing on the dirt were [sic] they had just came from.
>
> With the counter balance now gone from the ATV it comes over backward, the driver being thrown clear, and the ATV lands on Van at the bottom of the hill.

Dance Aff., Exh. D.

Hale was transported to a hospital in Moab, Utah and then was ultimately transferred to the University of Utah Hospital due to the severity of his injuries. Dance Aff. Exh. B. Hale suffered three fractures in his pelvis, one in his sacrum, his lumbar spine had been fractured in eight areas, and four of his ribs had been broken. His right arm and wrist were also broken. Dance Aff., Exh. B.

The off-road recreational vehicle that resulted in this accident was a 2005 Honda FourTrax Rancher ES and was owned by Nick and Teresa Imeson but was being used by Mark Hale, who incidentally has no relation to Hale. Dance Aff., Exh. B. The Imesons had not registered the off-road recreational vehicle in the State of Wyoming; it did not have any license plates; and it was not covered under any liability policy. Dance Aff., Exh. E.

On May 6, 2009, Hale's Attorney John D. Bowers, who was with Hale at the time of the accident and who witnessed the accident, drafted a letter to Allied Insurance demanding $400,000.00 or $100,000.00 for each automobile that is insured under Policy # AACM0015996294-6. Dance Aff., Exh. B. On June 1, 2009, Nationwide sent a letter confirming receipt of Hale's demand, and indicated that "[b]ased on the limited information we have regarding this claim, we are issuing this brief letter advising you that some coverage issues exist in regards to this loss. Please be aware that Nationwide Mutual Insurance Company will investigate this claim even those these issues of coverage may exist. . . . Nationwide Mutual Insurance reserves the right to deny coverage to any other person or entity seeking coverage under the policy." Dance Aff., Exh. F.

On June 5, 2009, counsel for Hale drafted another letter to Nationwide expressing concerns that the language used in the June 1, 2009 letter was vague, and requesting more detail so they could provide the necessary information. Dance Aff., Exh. G. Responding to these concerns, Nationwide sent another Reservation of Rights letter spelling out more specifically its concerns and requesting Hale to provide certain information. Dance Aff. Exh. H. On June 25, 2009 , Hale once again made a demand for payment. Dance Aff., Exh. I. Specifically, in this letter, he requested immediate payment of $175,000.00 to be made within 15 days. Dance Aff. Exh. I

A full investigation into coverage was conducted. The results of the investigation indicated that (1) the off-road recreational vehicle was designed mainly for use off of public roads pursuant to Wyoming law; (2) the location of the loss was not on a public roadway pursuant to Utah law; (3) the Medical Payments coverage is also precluded because the off-road recreational vehicle was designed for use off of public roads, and (4) the anti-stacking provision

of the policy is clear and does not violate Wyoming law and public policy. Dance Aff., Exh. J. On July 9, 2009, Nationwide sent a letter to Hale's counsel setting forth the aforementioned results of its investigation and denied coverage. Dance Aff., Exh. J. On July 13, 2009, Hale's counsel left a phone message with the adjuster, indicating that he had received the July 9, 2009, letter, and he thanked the adjuster for her professionalism . . . ." Dance Aff., Exh. P. On September 23, 2009, Hale's counsel indicated to the adjuster that he would be filing suit, but that he did not want to bring the suit because the adjustor had been "so nice." Dance Aff., Exh. P.

## IV. ARGUMENT

On October 23, 2009, Hale filed this suit in the United States District Court for the District of Wyoming contending (1) breach of contract, (2) the exclusions were against public policy, (3) bad faith denial of coverage and investigation. There is no genuine issue of material fact with regard to Hale's contentions, and Nationwide is entitled to judgment as a matter of law.

### A. Coverage is Precluded by the Unambiguous Terms of the Policy; Therefore, Nationwide Cannot by Liable for Breach of Contract.

Hale contends that by denying coverage of his claim, Nationwide breached the terms of its contract. For the reasons stated below, there is no genuine issue of material fact indicating that Nationwide acted contrary to the terms of its policy with Hale.

An insurance policy is a contract, and the general rules of contract construction apply to insurance agreements. *State Farm Fire and Cas. Co. v. Paulson*, 756 P.2d 764 (Wyo. 1998). The interpretation of a written contract is done by the court as a matter of law. *Ricci v. New Hampshire Ins. Co.*, 721 P.2d 1081 (Wyo. 1986). An exception to construing insurance policies as other contracts has been observed by the Wyoming Supreme Court where the

language of the policy is ambiguous, in which case the policy must be strictly construed against the insurer. *Paulson*, 756 P.2d at 764. A term in a contract is ambiguous if indefiniteness of expression or double meaning obscure the parties' intent. *T.M. v. Executive Risk Indemnity, Inc.*, 59 P.3d 721 (Wyo. 2002).

The policy specifically provides: "We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury.'" Dance Aff., Exh. A. The policy then excludes from "uninsured motor vehicle" any vehicle or equipment "Designed mainly for use off public roads while not on public roads." Dance Aff., Exh. A. There is no genuine issue of material fact that (1) the vehicle in question was designed mainly for use off public roads and (2) was being used off a public road at the time of the occurrence.

**1. This vehicle was designed mainly for use off public roads**

Pursuant to Wyoming law, an "Off-road recreational vehicle" is:

> (I) A recreational vehicle primarily designed for off-road use which is fifty (50) inches or less in width, has an unladen weight of nine hundred (900) pounds or less and is designed to be ridden astride upon a seat or saddle and to travel on at least three (3) low pressure tires. A "low pressure tire" is a pneumatic tire at least six (6) inches in width, designed for use on wheels with a rim diameter of twelve (12) inches or less and having a manufacturer's recommended operating pressure of ten (10) pounds per square inch or less;

W.S. § 31-1-101(a)(xv)(K)(I) (2009).

Therefore, in classifying this vehicle pursuant to Wyoming law, it must be asked if this vehicle was primarily designed for off-road use. While the Wyoming Supreme Court has not specifically addressed this issue, several other courts have found that all terrain vehicles are designed to be used mainly off-road. *See, e.g.*, *State v. McKeen*, 977 A.2d 382 (Me. 2009);

*Boniey v. Kuchinski*, 677 S.E.2d 922 (W. Va. 2009); *State v. Fontaine*, 962 A.2d 197 ( Conn. App. Ct. 2009). Enlightening on the subject is the Wyoming Department of Transportation's Multipurpose Vehicle Frequently Asked Questions and Information (Nov. 26, 2007). The Wyoming Department of Transportation states: "The Federal Government does not recognize most MPV's (i.e. ATV's, side-by-sides, mini farm trucks, etc.) as on road vehicles. These vehicles are imported and marketed in the United States as Off-Road Vehicles and are not regulated by the National Highway Traffic Safety Administration (NHTSA) as on-road vehicles are." Dance Aff., Exh. K. Furthermore, apart from legal arguments, it is common knowledge that ***all-terrain vehicles*** are designed to primarily be used off of roads.

Apart from being designed primarily for off-road use, the Honda FourTrax Rancher ES has a width of 43.9 inches, an unladen weight of 525 pounds, is designed to be ridden astride on a saddle, and has four low pressure tires. Affidavit of Brian Jablonski Exh. A. Therefore, this vehicle is classified by Wyoming law as an "off-road recreational vehicle. W.S. § 31-1-101(a)(xv)(K)(I-III) (2009).

The clear indication of the statute is that this Honda FourTrax Rancher was designed primarily for use off of public roads. This indication is also consistent with its use on trails like the "Fins and Things 4x4 Trail." Certainly, there can be no genuine issue of material fact that this vehicle was designed primarily for use on public roads.

**2. This vehicle was not on a public road**

The issue of whether the "Fins and Things 4x4 Trail" is a public road raises several interesting choice of law issues. As this occurrence happened on a trail in Utah one can presume that Utah law would apply with regard to whether this trail was a "public road."[1]

Under Utah law, a public road "is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72-5-104(1); *see also Jennings Invest. L.C. v. Dixie Riding Club, Inc.*, 208 P.3d 1077 (Utah Ct. App. 2009). To satisfy the public thoroughfare element, one "must demonstrate proof of (i) passing or travel (ii) by the public, and (iii) without permission. *See Jennings Invest.*, 208 P.3d at 1081.

The "Fins and Things 4x4 Trail" does not qualify as a public road because no one can demonstrate proof of passing or travel by the public ***without permission***. The "Fins and Things 4x4 Trail" is a trail in the Sand Flats Recreation Area near Moab, Utah. Riding on the trails at Sand Flats Recreation Area is a privilege and not a right. To receive the privilege one must pay a fee and follow the BLM's rules. Therefore, the trails cannot be accessed without the permission of the BLM. Accordingly, pursuant to Utah law the "Fins & Things 4x4 Trail" does

---

[1] Under Wyoming law, the "Fins & Things 4x4 Trail" is also not considered a "public road." In *Yeager v. Forbes*, 78 P.3d 241 (Wyo. 2003), the Wyoming Supreme Court addressed the issue of what constitutes a public road. There, the Court addressed this issue with regard to a dispute over public access to a trail that crossed private land. The court considered the history of Wyoming roads and cited a 1919 statute that vacated the public status of any road. The Court stated that this "act provided that no roads should be public roads unless and until duly established as the act provided." *Id.* at 255. Ultimately, the Court concluded that the trail was not a public road because "the records of Sheridan County [did] not show that the trail in question had ever been recorded and established as a public road as required by statute." *Id.* Similar to the *Yeager* case, the "Fins & Things 4x4 Trail" has not been recorded in Utah as a road. Therefore, based upon Wyoming law, the "Fins & Things 4x4 Trail" is not a public road.

not constitute a public road. Therefore, there is no genuine issue of material fact that the trail where the accident occurred is not a public road.

Apart from legal arguments, common sense and logic indicate that the "Fins & Things 4x4 Trail" is not a public road, but a trail. Simply consider the following descriptions:

> Most of the ***trail*** is slick rock but there is some loose deep sand. One steep sand hill near the beginning of the trail will give some vehicles problems if it is very dry. There are several steep ups and downs on slick rock that give definition to the "daring" mentioned in the description of the 3 1/2 trail rating this trail carries. Frenchie's Fin and Ken's Climb are about as steep as can be done. Drivers with near stock vehicles and little experience are well advised to take the bypass at Ken's Climb.

Dance Aff., Exh. L (emphasis added).

> A giant sandstone roller coaster with perfect traction, enabling incredibly steep climbs and descents. Absolutely beautiful area. Extremely steep climbs and descents over tire-blackened slickrock. Assistance may be needed at steepest points. For advanced riders only. Make sure you wear a helmet. Easy to get lost.

Dance Aff., Exh. M.

The photographs of the scene of the accident depict a very rough terrain and steep sandstone embankment. Dance Aff., Exh. N. Certainly, if this stretch of trail were classified as a public road, the exclusion in the policy would be rendered meaningless as no area could not be considered a "public road."

**B. The Provisions in Question Are Not Contrary to Wyoming Law or Public Policy**

In his Complaint, Hale contends that the uninsured motorist exclusions and the stacking provision of the policy should be reformed to comply with Wyoming law and public policy. There is no genuine issue of material fact that the terms of the relevant policy are consistent with Wyoming law and public policy.

**1. The exclusions under the uninsured provision are consistent with Wyoming's financial responsibility statute.**

Under Wyoming law, parties have the right to embody in their contract whatever lawful terms they wish on the condition that the insurance agreement does not conflict with pertinent statutes and public policy. *Commercial Union Ins. Co.*, 732 P.2d 534, 536 (Wyo. 1987). The Wyoming Uninsured Motorist Act provides:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as provided by W.S. 31-9-102(a)(xi), under provisions approved by the insurance commissioner for the protection of persons insured thereunder or legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The named insured may reject the coverage. Unless the named insured requests the coverage in writing, the coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer.

Wyo. Stat. Ann. § 31-10-101 (2009).

The Wyoming Uninsured Motorist Act is designed to furnish protection, by insurance, for victims of uninsured motorists. *Ramsour v. Grange Ins. Ass'n*, 541 P.2d 35, 38 (Wyo. 1975). "Uninsured motorist coverage compliments financial responsibility legislation, by providing coverage to innocent persons who suffer damages because of the wrongful conduct of uninsured motorists who are not financially responsible and, therefore, cannot be made to respond in damages." *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 821 (Wyo. 1994) (internal citations omitted).

Liability insurance is only required on motor vehicles that are required to be registered in Wyoming. Wyo. Stat. § 31-4-103. As previously discussed, the 2005 Honda FourTrax is classified by Wyoming law as an "off-road recreational vehicle." Off-road recreational vehicles cannot be registered in Wyoming. Wyo. Stat. Ann. § 31-2-201. As one cannot register an off-road recreational vehicle, there is no requirement under Wyoming law to insure this vehicle.

Certainly, it cannot be said that a policy provision excluding uninsured coverage is contrary to public policy when the vehicle in question is not required to be insured in the first instance. It certainly would not further the purpose of the uninsured motorist statute to construe the statute in such a way that it would require uninsured motorist insurance to cover those motor vehicles which are not required to have liability insurance coverage. Accordingly, there is no genuine issue of material fact that the exclusionary provisions of this policy are in accordance with Wyoming law and public policy.

**2. The anti-stacking provision within the policy is consistent with Wyoming law and public policy**

An insurance policy in Wyoming constitutes a contract between insurers and insureds. *Martin v. Farmers Ins. Exch.*, 894 P.2d 618, 620 (Wyo. 1995). Under Wyoming law, parties have the right to embody in their contract whatever lawful terms they wish on the condition that the insurance agreement does not conflict with pertinent statutes or public policy. *Commercial Union Ins. Co*, 732 P.2d at 536. "[I]f insurers wish Wyoming courts to enforce policy provisions which will result in a 'windfall to the insurer' by precluding the aggregation of uninsured or underinsured motorist coverage from separate policies for which separate premiums have been paid by the insured and accepted by the insurer(s), they must have done so clearly and

unambiguously in terms that a lay-insured of ordinary intelligence could easily comprehend." *Aaron v. State Farm Mut. Auto. Ins.*, 34 P.3d 929, 932 (2001).

The policy provision precluding the stacking of uninsured policies from separate vehicles within this policy is clear and unambiguous. Specifically, the pertinent language of Mr. Hale's policy states:

> The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. "Insureds";
> 2. Claims made;
> 3. ***Vehicles or premiums shown in the Declarations.***

Dance Aff., Exh. A (emphasis added).

The declaration provides the limit of liability amount for an uninsured motorist claim for $100,000.00 for each person. This read together with the aforementioned language unequivocally precludes the stacking of the uninsured policy limits. There simply is no indefiniteness about the parties' intent with regard to this provision. Therefore, there is no genuine issue of material fact that this provision is consistent with Wyoming law and public policy.

**C. Nationwide Acted in Good Faith in the Investigation and Denial of Hale's Claim.**

Hale contends that Nationwide's actions in denying coverage and investigating his claim amount to a breach of the covenant of good faith and fair dealing, or bad faith. There is no genuine issue of material fact that Nationwide had a reasonable basis for denial and acted reasonably in investigating the claim.

The Wyoming Supreme Court recently considered whether an insurance company breached its covenant of good faith and fair dealing by denying a claim. There, the court stated, "In order to recover on a claim like the instant one, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy, and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Harper v. Fidelity & Guaranty Life Ins. Co.*, 2010 WL 2574192 * 9 (June 29, 2010) (citation omitted). The test to be applied in determining whether bad faith has occurred has recently been stated as follows:

> An objective standard is also used to determine whether an insurer has committed first-party bad faith. The question is whether the validity of the denied claim is fairly debatable. The validity of a claim is fairly debatable if a reasonable insurer would have denied or delayed payment of benefits under the facts and circumstances. To establish a claim for first-party bad faith, a plaintiff must establish (1) the absence of any reasonable basis for denying the claim, and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

*Id.* at *10 (internal citations omitted).

There is no genuine issue of material fact that denial of coverage in this instance was not only fairly debatable, but it was proper pursuant to the terms of the contract and applicable law. The policy **clearly** precludes coverage in this instance. *See* Part IV.A. Accordingly, it cannot be said that there was not a reasonable basis for denying the claim.

Nationwide acted as a reasonable insurer by conducting a thorough investigation and denying coverage when the policy clearly excludes such coverage. Therefore, Nationwide did not act in bad faith nor did it breach its covenant of good faith and fair dealing by denying coverage in this instance.

Hale also contends that Nationwide committed bad faith in investigating his claim. Hale's contentions focus on the allegation that he was required to obtain and provide information that was not required under the policy and by requiring him to obtain information from Mark Hale and the Imesons concerning the vehicle in question. According to Hale's Complaint, his primary complaints of bad faith investigation stem from language in Nationwide's June 9, 2009 reservation of rights letter. Specifically, Hale takes issue with Nationwide's requests for a list of witnesses, with contact information, contact information for the owner of the off-road recreational vehicle, information regarding the off-road recreational vehicle, and information with regard to insurance coverage of the vehicle. Such requests do not indicate a bad-faith investigation.

An insurer does not act in bad faith where reasonable minds could differ as to whether the insurer acted improperly in the investigation of the claim. *See Matlack v. Mtn. W. Farm Ins. Co.*, 44 P.3d 73, 81 (Wyo. 2002) (citation omitted).

The policy provides the duties and responsibilities of an insured after an accident or loss. Dance Aff., Exh. A. Specifically, the policy provides "A person seeking any coverage must: Cooperate with us in the investigation, settlement or defense of any claim or suit." Dance Aff., Exh. A. Nationwide's request does not exceed the scope of this policy provision, nor is it unreasonable. As in any accident, insurance and contact information is normally exchanged by the drivers at the scene of the accident. Armed with this information, an insurance company can

generally obtain the remaining necessary information. However, this case is different. Mark Hale was operating an uninsured off-road recreational vehicle owned by someone else that resulted in serious injury. Therefore, Nationwide was not afforded this basic information-gathering at the scene of the accident.

The collection of such basic information cannot be said to rise to the level of a bad faith investigation. Moreover, Hale's contentions are questionable given that the requests of the June 9, 2009 letter were made after Hale's attorney had requested more specific information on what he needed to provide Nationwide. Dance Aff., Exh. G. Finally, Hale's counsel informed Nationwide prior to filing suit that he did not want to, as the adjustor had been "so nice." Dance Aff., Exh. P. Hale's counsel also left the adjuster a voice message on July 13, 2009, thanking her for her professionalism. Dance Aff., Exh. P. There are simply no facts indicating that any of the requests made by Nationwide in the investigation into coverage of this claim are unreasonable or rise to the level of bad faith.

## V. CONCLUSION

Based upon the foregoing, Nationwide respectfully requests that the Court grant its Motion for Summary Judgment.

DATED this 19th day of August, 2010.

MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED

By [signature]
Julian E. Gabiola – Of the Firm
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of August, 2010, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be served by the method indicated below, and addressed to the following:

John D. Bowers
BOWERS LAW FIRM
P.O. Box 1550
Afton, WY 83110
Fax: (307) 886-1002

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
(✓) Facsimile

James K. Lubing
Lubing Law Office
P.O. Box 3894
Jackson, WY 83001
Fax: (307) 733-7471

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
(✓) Facsimile

Julian E. Gabiola