JOHN D. BOWERS
Wyoming Bar # 6-3090
Bowers Law Firm, PC
P.O. Box 1550
Afton, WY 83110
Telephone (307) 885-1000
Facsimile (307) 885-1002

JAMES K. LUBING
Wyoming Bar # 5-2284
Law Office of James K. Lubing
P.O. Box 3894
Jackson, WY   83001
Telephone: (307) 733-7242
Facsimile: (307) 733-7471

*Co-Counsel for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| VAN L. HALE ) | |
| ) | |
| Plaintiff, ) | Civil Action No.   09-CV-245-J |
| ) | |
| vs. ) | |
| ) | |
| ALLIED INSURANCE, ) | |
| NATIONWIDE INSURANCE, and ) | |
| John Does 1-3 ) | |
| ) | |
| ) | |
| Defendant ) | |
| ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the above-captioned Plaintiff by and through his attorneys, John D. Bowers and James K. Lubing hereby submits this memorandum in support of his Motion For Partial Summary Judgment Concerning the Exclusion Claimed by the Defendants

Specifically That The Accident Occurred On a Public Road And/Or The Defendant's Claimed Exclusion Violates Public Policy and informs the Court as follows:

## I.  INTRODUCTION

The Plaintiff Van L. Hale was seriously injured when an ATV operated by another person flipped over and landed on top of him.   The ATV was uninsured and operated by a non-family member.   Van L. Hale made a claim upon his uninsured motorist coverage with the Defendants and the Defendants denied coverage.   Specifically, the Defendants claimed that the exclusion:

> "However, "uninsured motor vehicle" does not include any vehicle or equipment:
> . . .
> 4. Designed mainly for use off public roads while not on public roads."
> . . .

The accident occurred in the Sand Flats Recreational Area in an area known as the Fins and Things Jeep Trial.   The area of the accident was within a marked motor vehicle route on BLM land, which is managed by the BLM and Grand County, Utah.   The motorized route is marked and designed for the use of ATV's and other motorized vehicles.   The accident occurred in a steep area, however, within the marked boundaries of the route.   Van L. Hale was seriously injured, which resulted in local law enforcement driving to where he was laying after the accident and loaded into an ambulance and transported to the local emergency room in Moab, Utah.   The Plaintiff's argument is that the accident occurred on a public roadway and as such, the Defendant's exclusionary language does not apply.   In the alternative, if the Court finds that this is not a public road as defined under Wyoming law, then the Plaintiff is requesting that the Court find that the Defendant's interpretation of the exclusionary language contained in the insurance policy is against public policy.   Specifically, but not limited to the fact that over fifty percent of Wyoming lands are owned by the Federal Government and the exclusionary language relied upon by the Defendants would greatly reduce or void the intent of the Wyoming legislature in acquiring uninsured motorist coverage in Wyoming.

## II.   UNDISPUTED FACTS

Van L. Hale purchased and paid for uninsured motorist vehicle coverage from the Defendants.

That for the time period that Van L. Hale was injured related to this litigation, the uninsured motorist vehicle coverage was in effect.

That Van L. Hale had paid premiums for the uninsured motor vehicle coverage from the Defendant.

That on March 28, 2009, Van L. Hale was injured when a Honda ATV flipped over and landed on him while he was riding on it on the Fins and Things Jeep Trail located in the Sand Flats Recreational Area.   (Chadwick depo pp. 57-60).

That the driver of the ATV caused the ATV to accelerate up a steep incline, flipping over and landing on Van L. Hale, causing severe injuries to Mr. Hale. (Chadwick depo pp. 59-60).

The Sand Flat Recreational Area is owned by the Bureau of Land Management and managed in cooperation with the BLM and Grand County, Utah. (Chadwick depo pp. 60-61).

The area that Van L. Hale was injured in is a designated 4-wheel drive route in the Sand Flats Recreational Area. (Chadwick depo p. 75).

After Van L. Hale was injured, an ambulance drove to the scene where Mr. Hale was laying. (Chadwick depo pp. 75-76).

That the accident that injured Van L. Hale occurred on the Fins and Things Jeep Trail. (Chadwick depo p. 77).

That after Mr. Hale was injured; a local law enforcement deputy patrol truck drove to the scene where Mr. Hale was laying. (Chadwick depo p. 78).

As a result of the accident with the uninsured motor vehicle, Van L. Hale sustained injuries to his back, pelvis, and wrist. (Affidavit of Van L. Hale ¶ 30).

That Van L. Hale has sustained permanent injuries to his body because of the accident with the uninsured ATV motor vehicle. (Affidavit of Van L. Hale ¶ 31).

### III.   RELEVANT STATUTORY AND CASE LAW

Wyoming mandates that uninsured motorist coverage be offered in the State of Wyoming pursuant to W.S. § 31-10-101 which states:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as provided by W.S. 31-9-102(a)(xi), under provisions approved by the insurance commissioner for the protection of persons insured thereunder or legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The named insured may reject the coverage. Unless the named insured requests the coverage in writing, the coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer.

W.S. § 31-10-101

Wyo. Stat. § 31-5-102 in defining definitions for that act states in relevant part:

> a) Except as otherwise provided, as used in this act:
> . . .
> (x) "Driver" means every person who drives or is in actual physical control of a vehicle;
> . . .
>  (xxii) "Motorcycle" means any motor vehicle having a seat or saddle for the use of the rider and designed to travel on not more than three (3) wheels in contact with the ground, excluding off-road recreation vehicles as defined in W.S. 31-1-101(a)(xv)(K), but including a motor vehicle designed as a recreational vehicle primarily for off-road use to be ridden astride and to travel on four (4) wheels;
> . . .
> (xxiv) "Motor vehicle" means every vehicle which is self-propelled except vehicles moved solely by human power and motorized skateboards as defined by paragraph (a)(lxii) of this section;
> . . .
> (xxvi) "Owner" means a person who holds the legal title of a vehicle or if a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested

in the conditional vendee or lessee, or if a mortgagor of a vehicle is entitled to possession, then the conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this act;
. . .
(xxxiv) "Private road or driveway" means every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons;
. . .
(xl) "Roadway" means that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the sidewalk, berm or shoulder. In the event a highway includes two (2) or more separate roadways the term "roadway" as used herein shall refer to any such roadway separately but not to all such roadways collectively;
. . .
(xlix) "Street or highway" means the entire width between the boundary lines of every way publicly maintained or if not publicly maintained, dedicated to public use when any part thereof is open to the use of the public for purposes of vehicular travel;
. . .
(lviii) "Vehicle" means every device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon stationary rails or tracks;
. . .
(lx) "Emergency services" means fire fighting, first aid, medical services, rescue, transportation and other related activities necessary to ensure the health or safety of a person or property in imminent peril;
. . .
(lxiii) "Multipurpose vehicle" means as defined in W.S. 31-1-101(a)(xv)(M).
W.S.1977 § 31-5-102

W.S. . § 31-5-102

The Wyoming Supreme Court has set the basic tenants of an insurance policy construction as follows:

   1. "[T]he words used will be given their common and ordinary meaning. Neither will the language be 'tortured' in order to create an ambiguity."

   2. "The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended."

   3. "Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance."

   " . . . [T]he parties have the right to employ whatever lawful terms they wish and courts will not rewrite them."

   4. "Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms."

   5. " . . . [W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be so construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted."

*Farmers Ins. Exchange v. Williams* 823 F.Supp. 927, 931 (D.Wyo.,1992)(citing *Commercial Union Insurance Co. v. Stamper,* 732 P.2d 534, 539 (Wyo.1987) (alteration in original)).

When a court interprets and considers uninsured motorist coverage, a certain amount of the determination is mandated by public policy considerations. *Farmers Ins. Exchange v. Williams* 823 F.Supp. 927, 931 (D.Wyo.,1992). The Wyoming Uninsured Motorist Act is designed to furnish protection, by insurance, for victims of uninsured motorists and thus, any ambiguous language should be liberally construed in favor of the insured with strict and narrow construction given to exclusions. *State Farm Mut. Auto. Ins. Co. v. Shrader*, 1994, 882 P.2d 813.

The Wyoming Supreme Court has defined what a public road is in several factual situations ranging from violations while operating a motor vehicle to interpretation related to the private road statutes. Examples of the Wyoming Supreme Court's analysis concerning public roads are:

   Considering the statutory definitions of "highway" set forth above, we find no ambiguity. Upon simple reading of these definitions and application of the plain and ordinary meaning of those words, we clearly discern the legislature's intent that the term "highway" include a road that is either 1) publicly maintained, or 2) dedicated for public use in such a manner that any part is open for use by the public for purposes of vehicular travel. We further determine that in a situation where a road is not publicly maintained, 599 it is *not* required that the road be either formally statutorily dedicated, as asserted by Petitioner, or dedicated in common law as allowed under established Wyoming case law for the road to be deemed a "highway." Rather, in such an instance, the proper interpretation

of the legislature's intent is that the road merely be dedicated for public use through the opening of any part of it for use by the public for purposes of vehicular travel

*McClean v. State*   62 P.3d 595, 598 -599 (Wyo.,2003)

The status of BLM roads has been considered by at least one other court. In Major v. Douglas County, 1971, 6 Or.App. 544, 488 P.2d 808, the court there considered the test to be the right of the public to use it. There, like here, the general public had for many years enjoyed the right to use the BLM road; so, therefore, it was a public road within Oregon statutory language, "any public road within the county." That holding is no different conceptually than the general one used in the absence of an applicable statutory definition. A public road is one that the public generally not merely a portion of the public is privileged to use. In re Penn Avenue, 1956, 386 Pa. 403, 126 A.2d 715; Galloway v. Wyatt Metal & Boiler Works, 1938, 189 La. 837, 181 So. 187, 189; Sumner County v. Interurban Transp. Co., 1919, 141 Tenn. 493, 213 S.W. 412, 413, 5 A.L.R. 765; Heninger v. Peery, 1904, 102 Va. 896, 47 S.E. 1013. Within the facts reflected by the record, then, we must conclude that the BLM road is a public road within the terms of s 24-9-101, supra

*McGuire v. McGuire*   608 P.2d 1278, 1288 (Wyo., 1980)

Therefore, we hold, as a matter of law, a road over federal lands may be considered a public road within the meaning of our private road statutes, provided the characteristics of the road indicate it is available to the general public.

*Reidy v. Stratton Sheep Co.*   135 P.3d 598, 606 (Wyo.,2006)

## IV.   DISCUSSION AND ARGUMENT

A.   <u>The exclusion relied upon by the Defendants to deny coverage to Van L. Hale is not applicable in that the accident occurred on a public road.</u>

The Defendants have denied coverage based on their allegation that the accident did not occur on a public road.   The uninsured motor vehicle motorist coverage is mandated by the State of Wyoming pursuant to Wyo. Stat. § 31-10-101.   As such, exclusions to uninsured motorist coverage should be strictly construed against the insurance company.   *Farmers Ins. Exchange v. Williams*   823 F.Supp. 927,

931 (D.Wyo.,1992)(citing *Commercial Union Insurance Co. v. Stamper,* 732 P.2d 534, 539 (Wyo.1987) (alteration in original));   *Allstate Ins. Co. v. Wyoming Ins. Dept.*   672 P.2d 810, 813 -814 (Wyo.,1983).

   As stated by a Washington Court, "Because of the important policy considerations inherent and excluding coverage to large classes of persons, courts strictly scrutinize exclusions to see whether they comport with public policy."   *Allstate Ins. Co. v. Wyoming Ins. Dept.*   672 P.2d 810, 816 (Wyo.,1983).   The purpose of compulsory automobile liability insurance "is to protect members of the general public injured on the highways through the operation of the covered motor vehicle, by giving them security for the payment of their damages." *Couch on Insurance,* 2d, § 45:682, p. 319.   Additionally, compulsory liability policy should be construed most strongly against the insured – that is, such statutes as those with which we are here concerned with and the policies should be liberally and broadly construed in favor of the insured in order to accomplish its purpose.   *Couch on Insurance,* 2d, Supra, Automobile Insurance § 45:692, p. 330. Courts make a distinction between "uninsured" motorist coverage and "underinsured" motorist coverage when interpreting policies.   Specifically, courts more closely scrutinize the exclusions in uninsured motorist coverage policies because uninsured motorist coverage is mandated.   *Winegeart v. American Alternative Ins. Corp.*   224 Fed.Appx. 807, 809, 2007 WL 987429, 2 (C.A.10 (Wyo. (C.A.10 (Wyo.),2007)

   Taking into consideration the fact that uninsured motorist coverage is mandated in Wyoming, then the Plaintiff would urge the Court to use the most liberal and broadly construed interpretation of public roads.   In the present case, Van L. Hale was injured while traveling on a publically owned and maintained route in the Sand Flats Recreational Area on a portion referred to as the Fins and Things Jeep Trail.   The route is publically owned by the Federal Government under the BLM and managed in cooperation with Grand County, Utah.   (¶Affidavit of Van Hale ¶ 17, 18, 19, 24).   The route was open and marked for public travel although it is primarily used by ATVs and 4-wheel drive vehicles.   (¶Affidavit of Van Hale ¶ 18).   The accident that Van L. Hale was injured at was on the BLM and Grand County designated route and marked and

controlled by the BLM and Grand County, Utah.    (Affidavit of Van L. Hale ¶ ¶ 17, 18, 19, 24).

The route in which Van L. Hale was injured is a marked motor vehicle route in the Sand Flats Recreational Area. (Affidavit of Van L. Hale ¶ 24).    Close to 100,000 visitors use the Sand Flats Recreational Area each year (Sand Flats Recreational Visitor Guide p. 1).   The public that uses the area are required to follow the BLM and Grand County Utah's posted rules and regulations; specifically the public is required to stay on the designated routes (Sand Flats Recreational Visitor Guide p. 3) (Hale Affidavit ¶ ¶ 17, 18). OHV vehicles such as ATVs, such as the one that Van L. Hale was injured by, are allowed to be driven on the designated roads and trails within the Sand Flats Recreational Area (Sand Flats Recreational Visitor Guide p. 4) (Hale Affidavit ¶ ¶ 17, 18).    Part of the restrictions placed on the public on using the area include age restrictions, helmets, spark arresters, headlights and taillights in addition to traveling only on the designated roads and trails (Sand Flats Recreational Visitor Guide p. 4).

The route that Van L. Hale was traveling when he was injured is one of the "most popular jeep" routes in the Sand Flats Recreational Area (Sand Flats Recreational Visitor Guide p. 8).    The route that Van L. Hale was injured on is referred to as the Fins and Things 4x4 Trail.   The area is recommended only for experienced drivers and not recommended for ATVs, however, ATVs are allowed on the route (Sand Flats Recreational Visitor Guide p. 13).    The public who utilize the Sand Flats Recreational Area must pay a posted user fee.    (Hale Affidavit ¶ 17).    The fees are used to benefit the public and the program including general maintenance in maintaining the routes, fences and signs (Sand Flats Recreational Visitor Guide p. 3).    The public partnership between the BLM and Grand County, Utah has stated that their mission in managing these public lands is in part to "provide for public safety; assure the continuation of positive economic benefits to the county associated with public use of the area; and maintain reasonable public access to the area for recreational and other sustainable uses." (Sand Flats Recreational Visitor Guide p. 1).

Other important factors in demonstrating to the Court this was a public road as

defined by the State of Wyoming is that Van L. Hale was injured when the uninsured ATV operated by another person flipped over and landed on top of Van L. Hale after he was thrown from the vehicle and lying on the sandy roadway. (Hale Affidavit ¶ 27). Because of Mr. Hale's severe injuries, Mr. Hale was not moved until law enforcement and emergency medical technicians could arrive at the scene. (Hale Affidavit ¶ 29). The law enforcement officer that arrived at the scene drove on the marked public route directly to Van L. Hale's location, where he stopped his patrol truck next to Mr. Hale and administered emergency first aid. (Hale Affidavit ¶ 29). A four wheel drive ambulance drove on the Fins and Things route to Mr. Hale's location, where the emergency medical technicians administered first aid and then placed Mr. Hale into the ambulance for transportation (Hale Affidavit ¶ 29).

1. For the Court's convenience, the Plaintiff has attached pictures of the incident immediately after Mr. Hale's accident, which are representative of the scene described in this paragraph. The first photograph shows the route just seconds before Mark Hale accelerated, throwing Van L. Hale from the ATV and the ATV landing on top of Van L. Hale. The second picture shows Van L. Hale's position on the sandy road after the ATV had been lifted from him. The third picture shows first aid being administered to Van L. Hale by emergency medical technicians lying in the same state as when the ATV had been lifted from him. The fourth picture shows the ambulance that drove directly to Van L. Hale and the law enforcement officer that responded to the scene. The fifth picture shows Van L. Hale being lifted from where he had been injured into the back of the ambulance to be transferred to the emergency room located in Moab, Utah.

In the case of *McGuire v. McGuire* 608 P.2d 1278 (Wyo., 1980), the Court determined that a BLM road was a public road. In making the determination, the Wyoming Supreme Court stated that "a public road is one that the public generally not merely a portion of the public is privileged to use." *Id. (*citations omitted). The *McGuire* case dealt with a private road issue under the private road statutes of the State of Wyoming. The *McGuire* decision was modified by the Wyoming Supreme Court in case

of *Reidy v. Stratton Sheep Co.* that in the setting of a private road, that a BLM road may be considered a public road if "characteristics of the road indicated is available to the general public." *Id.* at 606.   The *Reidy* case again dealt with the establishment of a private road under the private road statutes of the State of Wyoming.   The *Reidy* Court pointed out that "we must, therefore define a public road in the general sense, keeping in mind what the enacting legislature must have intended at the time of the passage of the act, when the state was just coming to life." *Id.* at 604.   In the *Reidy* case, some of the factors that the Court pointed to was that the road had been opened to the general public for more than forty years, it had been used by tourists, hunters, ranchers, farmers, and even motorcyclists.   The *Reidy* Court stated that roads over federal lands may be considered public roads under the Wyoming private roads statutes, however, the individual characteristics of each road is to determine its status.   *Id.* at 608.

Given the facts of the present case, under the *McGuire* case and the *Reidy* case, the route that Van L. Hale was traveling on when he was injured by the uninsured motor vehicle would be considered a public road.   The route is a marked route on public lands, which are owned, operated and managed by the BLM and Grand County Utah.   A user fee is charged to use the motorized route; however, the fee is used for the public benefit in maintaining and operating the area.   The area is open to "all" of the public (Hale Affidavit ¶ 16)

In *McClean v. State*  62 P.3d 595, 598 -599 (Wyo.,2003), the Wyoming Supreme Court held that the roadway within a mobile home part was a "highway dedicated to public use" within the meaning of the Wyoming Statutes governing the operation of motor vehicles by individuals who have a suspended driver's license.   The *McClean* Court pointed to the fact that under the Wyoming Statutes, highways or streets, when any part of the route is open to the use of the public for purposes of vehicular travel, or publically maintained, or dedicated to the public. *Id.* at 599.   One of the primary factors that the *McClean* Court focused on was whether the area was dedicated to public use. *Id.*

The factors that the *McClean* Court looked at was that the area was not closed to the public, members of the public could drive through the area, that there was mail delivery and other services including patrol by law enforcement in the area and that there were no other indications that the area was private. *Id.* The primary focus of the *McClean* Court was that the facts demonstrated that it was the "intention to allow the public to use those roads for vehicular travel" within the area. *Id.* Additionally, the *McClean* Court pointed out that the public has exercised its ability to use the roads by traveling on them in their vehicles. *Id.* at 599-600.

The *McClean* case can be argued as an even more liberal interpretation of what a public road is defined as in the State of Wyoming. In essence, it is the intention to allow the public use that is the primary factor. The area that Van L. Hale was injured in is a marked public route, used by the general public (Hale Affidavit ¶ 24). The area is part of public lands and is a marked route intended for motorized vehicle use. For example, in 2001, the Department of Interior placed additional restrictions on the area citing the need to better regulate the motorized vehicle routes such as the one that Van L. Hale was traveling on when he was injured. (Federal Register vol. 66, no. 114 Monday January 22, 2001/notices). As part of the basis for imposing the new travel restrictions, the Department of Interior stated that "these actions are necessary to halt ongoing impacts and prevent future degradation of resource values. They are being implemented on an interim basis to protect resource values and public safety"))). (Supra, at 6659). In managing the route and area that Van L. Hale was injured on, the BLM seeks the public comments in the management of the area by the Bureau of Land Management (Federal Register May 3, 2004 vol. 69 no. 85).

In determining if the route that Van L. Hale was injured on is a public road under the *McClean* case, the intent is clear that the route and this area is owned by the public and intended to be traveled upon by the public. As with any public road, there are restrictions such as requiring that the public stay on the designated routes and that a fee is charged for the public use to benefit the public. The user fee charged for the area does not restrict the use of the general public to any portion of the public, but rather is simply

a fee to benefit the public's use and maintenance of the area. (Hale Affidavit ¶ 17). The user fee can be related to that of the public paying a toll to use a public road in other parts of the country.

In strictly construing the exclusions of the Defendant, the facts of this case establish as a matter of law that Van L. Hale was injured while on a public road. Although its characteristics are somewhat different in that it was a 4x4 route, nevertheless, it was open to the public for motorized vehicle traffic. The characteristics of this public roadway can be stated as being similar to the differences between I80 which travels through Wyoming and some of the steep mountain passes of Wyoming. Although their characteristics are different, the key factor is that they are designated routes open to the public for motorized vehicle use. In this case, the route was owned by the public, designated for public use, and intended for the public to use motorized vehicles on.

As a secondary source, American Jurisprudence, second addition contains a definition of a public road based upon case law throughout the United States. As part of the American Jurisprudent definition, it states "whether a road is public or private is determined by the extent of the right to use it and not by the extent to which the right is exercised or by the quantity of travel over it. A public is one that the public generally, not merely a portion of the public, is privileged to use." 39 Am. Jur. 2d Highways, Streets, and Bridges § 3 (citing *Anderson v. Richards*, 608 P.2d 1096 (1980) and *McGuire vs. McGuire*, 608 P.2d 1278 (1980)).

Under the *McGuire* case, the *Reidy* case and the *McClean* case, the facts of this case establish that Van L. Hale was injured on a public road and as such, the Defendant's exclusion does not apply. The Plaintiff respectfully requests that the Court find as a matter of law that the route traveled by Van L. Hale at the time he was injured is a public road as defined under Wyoming laws.

B.   The Defendant's uninsured policy exclusion are against public policy of the State of Wyoming.

Because this case deals with uninsured motorist coverage, public policy

considerations are of the utmost importance in determining if the Defendant's exclusion applies.  *Farmers Ins. Exchange v. Williams*  823 F.Supp. 927, 931 (D.Wyo.,1992).  As pointed out by the Wyoming Supreme Court, public policy is not easily defined

> It was said in *Mutual of Enumclaw Insurance Company v. Wiscomb,* 25 Wash.App. 841, 611 P.2d 1304, 1307 (1980):
>
> " 'Public policy is a term not easily defined. Its significance varies as the habits and needs of a people may vary. It is not static and the field of application is an ever increasing one. A contract, or a particular provision therein, valid in one era may be wholly opposed to the public policy of another .... Courts keep in mind the principle that the best interests of society demand that persons should not be unnecessarily restricted in their freedom to contract. But they do not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way.' " *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69, 94-95 (1960), quoted with approval in *Baker v. Seattle,* 79 Wash.2d 198, 200-01, 484 P.2d 405 (1971). See also *McCutcheon v. United Homes Corp.,* 79 Wash.2d 443, 486 P.2d 1093 (1971)."

*Allstate Ins. Co. v. Wyoming Ins. Dept.*  672 P.2d 810, 816 (Wyo.,1983)

In addition, the Wyoming Supreme Court has stated that "because of the important policy considerations inherent in excluding coverage to large classes of persons, courts strictly scrutinize exclusions to see whether they comport with public policy."  *Id.* at 816.  The general rule concerning interpretation of exclusions when dealing with uninsured motorist coverage, is that the exclusions should be strictly construed against the insurance company.  *Id.* at 816-818; *Couch on Insurance* 2d, § 45:692, p.330.

In the case of *Allstate Ins. Co. v. Wyoming Ins. Dept.*, the Wyoming Supreme Court weighed heavily the public policy and ultimately determined that the "household exclusion clause" contained in some uninsured motorist insurance policies was invalid and void based in part because it was against the public policy of the State of Wyoming. The *Allstate* Court pointed out that although parties to an insurance contract may limit their rights and liabilities, they cannot do so when it is "inconsistent with public policy." *Id.* at 816.  The *Allstate* Court, citing a Washington Court, summarized how these types

of exclusions should be scrutinized by stating:

> "Because of the important policy considerations inherent in excluding coverage to large classes of persons, courts strictly scrutinize exclusions to see whether they comport with public policy"

*Id.* (citations omitted)

In the case at hand, uninsured motorist coverage is mandated by the State of Wyoming. Van L. Hale obtained and purchased the uninsured motorist coverage and paid his premiums. His expectation was that he would be protected by the negligent use of an uninsured motorist vehicle as in the incident in this case. He was traveling upon a route that is owned by the public, managed by the public, and intended for motorized vehicle use. After being severely and permanently injured, Van L. Hale made a claim upon his uninsured motorist policy to find that the Defendants are arguing that an exclusion applied. Specifically, that while traveling upon public lands on a designated route, following the rules and regulations of the BLM and Grand County, it was their position that it was not a public road.

Through its various agencies, the Federal Government owns <u>over fifty percent</u> of the land in the State of Wyoming. *Reidy v. Stratton Sheep Co.* (citations omitted). If the route that was traveled upon by Van L. Hale is not a public road under the Court's interpretation, Wyoming citizens who purchase uninsured motorist coverage in the State of Wyoming could be subject to the same exclusion if injured by a motor vehicle on a route designated as a road on over fifty percent of Wyoming's land. Certainly pointing out that the Defendant's exclusion has two parts, but the point being that routes that the citizens of the State of Wyoming travel could be affected by allowing insurance companies to write exclusions that limit mandatory coverage on federally owned property in the State of Wyoming. If the routes on public lands in Wyoming are not paved and regulated just as the one Van Hale traveled on. Ranches, emergency workers and many other Wyoming citizens travel these roads every day. The effect of finding these roads on Federal lands are not public roads would change the interpretation of uninsured motorist coverage on 50% of the lands in Wyoming. It would also make a detrimental inconsistency. For example, a person injured by an uninsured ATV on a

rarely traveled route on a county road would not be excluded from coverage. But a person injured on a well traveled rote to access Federally owned property would be subject to the exclusion and not covered.

The Defendant's interpretation if allowed to stand, will drastically modify the landscape of insurance coverage on publically owned land in the State of Wyoming. The Defendants are in essence attempting to state that when a person travels upon federally owned land on a designated route, that it is not a public roadway. With over fifty percent of Wyoming ground being owned by the federal government, this interpretation if allowed to stand, would impact the individuals who travel routes on public lands and would benefit insurance companies. As such, the Plaintiff would ask the Court to find that the Defendant's interpretation of a public road is against the interest of the citizens of the State of Wyoming and all individuals who use and travel the public lands within the State of Wyoming.

## V.   SUMMARY

Van L. Hale asks the Court to find that the Defendants exclusion does not apply. Specifically, that the area traveled by Van L. Hale was a public roadway as defined by the laws of the State of Wyoming, or in the alternative, that the interpretation and exclusion relied upon by the Defendant is against public policy. The relevant facts in this matter are not in dispute and as such, the Plaintiff asks the Court to find as a matter of law that the area traveled by Van L. Hale was a public road, or in the alternative, that as a matter of law, the interpretation of public roads and the exclusion relied upon by the Defendants are against public policy.

RESPECTFULLY SUBMITTED this 10th day of September, 2010.

          ___/s/ *John D. Bowers*___
          John D. Bowers
          Bowers Law Firm, PC
          P.O. Box 1550
          Afton, WY 83110
          Telephone: 307-885-1000
          Facsimile: 307-885-1002

          Attorney for the Plaintiff

## CERTIFICATE OF SERVICE

I certify that the foregoing Plaintiff's Motion For Partial Summary Judgment was served this 10th day of September, 2010, and that copies were served as follows:

| | | |
|---|---|---|
| Gary T. Dance | [_____] | US Mail |
| Moffatt, Thomas, Barrett, Rock | [_____] | Fed Ex |
| & Fields, Chartered | [_____] | Facsimile |
| P.O. Box 817 | [_____] | Hand Delivery |
| Pocatello, ID   83204 | [_____] | E-mail |
| Telephone: (208) 233-2001 | [___X___] | E-filed |
| Facsimile: (208) 232-0150 | | |

/s/   *John D. Bowers*_____
John D. Bowers