# Hale Affidavit

JOHN D. BOWERS
Wyoming Bar # 6-3090
Bowers Law Firm, PC
P.O. Box 1550
Afton, WY 83110
Telephone (307) 885-1000
Facsimile (307) 885-1002

JAMES K. LUBING
Wyoming Bar # 5-2284
Law Office of James K. Lubing
P.O. Box 3894
Jackson, WY 83001
Telephone: (307) 733-7242
Facsimile: (307) 733-7471

*Co-Counsel for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| VAN L. HALE | ) |
| Plaintiff, | ) Civil Action No. 09-CV-245-J |
| vs. | ) |
| ALLIED INSURANCE, NATIONWIDE INSURANCE, and John Does 1-3 | ) |
| Defendant | ) |

## AFFIDAVIT OF VAN L. HALE

STATE OF WYOMING   )
                   ) ss
COUNTY OF LINCOLN  )

VAN L. HALE, having been sworn upon oath, deposes and states as follows:

1. That my name is Van L. Hale, and I am over the age of eighteen.
2. That I am the Plaintiff in this case.

*09-CV-245-J*
*Affidavit of Van L. Hale*
*Page 1 of 8*

3. That I am married to Susan Hale and I reside in Afton, Wyoming.

4. That I am a chiropractor with my primary office being located in Afton, Wyoming, serving primarily the people of Star Valley, Wyoming.

5. Prior to returning to college and chiropractic school I was a sworn Wyoming law enforcement officer for over five years.

6. As part of my law enforcement training, I attended the Wyoming Law Enforcement Academy, where I graduated and was sworn in as a Wyoming peace officer. During my law enforcement tenure, I was employed by the Afton Police Department as a patrol officer and supervising sergeant. As part of my duties, I enforced the traffic and highway laws in the Town of Afton and the State of Wyoming. Because of my training and experience I am aware of the difference between private roads and public roads for the purposes of enforcing the state of Wyoming traffic laws.

7. I have served as a councilman and mayor for the Town of Afton, which also involved passing and implementing traffic laws for the Town of Afton.

8. For approximately ten years I have traveled to the Moab, Utah area for recreation. I have traveled extensively on the roads and trails located on the state and federal lands located near Moab, Utah. My extensive experience in the area has involved hiking, bicycling, and riding and driving motorized vehicles on the roads and trails on the state and federal lands in Moab, Utah.

9. During the ten-plus year period that I have been traveling with my family to Moab, Utah, I have traveled to what is known as the Sand Flats Recreational Area and have extensive experience traveling the marked routes within the Sand Flats Recreational Area.

10. During the times that I have traveled to the Sand Flats Recreational Area, I have had the opportunity to discuss the area with local law enforcement and federal law enforcement. This is based primarily because of the fact that I was in law enforcement and our common understanding of law enforcement issues. I became friends with a Grand County deputy that patrolled the Sand Flats Recreational Area and often stayed at property that was managed by his family when I traveled to Moab, Utah.

11. Because of my law enforcement experience, my extensive travels in the Sand Flats Recreational Area and in-depth discussions with law enforcement officers

that patrol the Sand Flats Recreational Area and my research concerning the rules and regulations of the area prior to my travels I have extensive and in-depth knowledge of the ownership of the Sand Flats Recreational Area, how it is managed, and the rules and regulations that govern it.

12. Attached to my affidavit is the Sand Flats Recreational Area visitors' guide which in my understanding, opinion, and belief is published in cooperation between a partnership with the Bureau of Land Management and Grand County, Utah. From my experience of the area research concerning rules and regulations prior to my travels and in-depth discussions with law enforcement officers, the attached Sand Flats Recreational Area visitors' guide is a fair and accurate representation of the ownership, management, and a synopsis of some of the rules and regulations that govern the use by the public of the Sand Flats Recreational Area.

13. The Sand Flats Recreational Area is near Moab, Utah and is described near the federally owned and maintained Arches National Park. The Bureau of Land Management and Grand County, Utah estimate that it receives over one hundred thousand visitors per year. In my extensive travels on the marked routes in the Sand Flats Recreational Area I have personally observed the general public extensively using the area for activities such as, hiking, biking, camping, and motorized vehicle travel. I have personally met members of the public using the Sand Flats Recreational Area from all over the United States and many individuals from out of the United States.

14. In my ten-plus years in traveling to the Sand Flats Recreational Area, neither the Bureau of Land Management nor Grand County, Utah has ever limited or stopped my travels on the marked routes within the Sand Flats Recreational Area. The Sand Flats Recreational Area is open for use for all of the public and does charge all of the public and does not limit the use to any portion of the general public.

15. When you enter the Sand Flats Recreational Area you drive into it on a paved road which continues through part of the Sand Flats Recreational Area and then turns into gravel and dirt roads.

16. The Sand Flats Recreational Area is open to the general public throughout the year and throughout the day and night.

17. At the boundary of the Sand Flats Recreational Area there is a small

visitors' station that requires you to pay a small fee for the use of the Sand Flats Recreational Area. The fees are paid to the Bureau of Land Management and Grand County, Utah to be used for the management of the Sand Flats Recreational Area. (See Exhibit A – Sand Flats Recreational Area visitors' guide.) When you pay your user fee you receive maps and other information setting forth where the marked routes for travel are in the Sand Flats Recreational Area and other helpful information regarding safety and regulations of the Sand Flats Recreational Area. The visitors' office is not open after six p.m. however, and to pay the small user fee, the users are directed to place the small fee in a self-pay envelope and deposit it at the visitor's station.

18. The directions and maps given at the visitor's station provide detailed maps of the routes which are marked and allow motor vehicle traffic. One of the clearly mapped and marked routes is the Fins and Things 4x4 Jeep Route. The Fins and Things Jeep Route is open to travel by all motor vehicles including, ATVs and motorcycles.

19. From my past use I have personally observed that the Fins and Things 4x4 Jeep Route is patrolled by law enforcement officers. The route is clearly marked with signs posted directing the vehicle traffic and clearly stating and requiring that motorized vehicles only use the designated route. Any motor vehicles traveling off of the clearly marked designated route are subject to criminal penalties. The Fins and Things 4x4 Jeep Route is marked and intended that there is no mistake by the general public as to what the route is because of the criminal fines that are imposed in the event motor vehicles travel off of the designated route.

20. On March 28, 2009, I traveled to the Sand Flats Recreational Area with approximately twenty family members and friends. Our purpose was to use motorized vehicles to travel the Fins and Things 4x4 Jeep Route using motorcycles and ATVs. Our group was made up of males and females ranging from age ten to age fifty-two.

21. After paying our user fee at the visitor's center at the Sand Flats Recreational Area, we traveled to the Fins and Things 4x4 Jeep Route.

22. During our approximately two hours of travels I observed motorized vehicles using Fins and Things 4x4 Jeep Route ranging from motorcycles to Jeeps and other 4-wheel drive vehicles. Throughout the day as we encountered other members of

the public using the Fins and Things 4x4 Jeep Route we would yield and obey the rules and regulations of driving on the public area. After using our motorized vehicles to travel on the Fins and Things 4x4 Jeep Route for approximately two hours we came to a portion of the Route that was on a sandy roadbed.

23. Traveling with our group was a nineteen year-old individual named Mark Hale, who is no immediate relation to me. I know Mark Hale because he lives in the same Star Valley community. However, he was a friend of another person in the group and had come with him and joined our group. Because of my limited experience and knowledge of Mark Hale, I had no knowledge of his driving abilities or operation of ATV's, however, I assumed he had extensive experience riding ATVs because it was my knowledge that his family owned and operated a small ranch in the Star Valley, Wyoming area.

24. After traveling on the Fins and Things 4x4 Jeep Route for approximately two hours, we came to an area that was a sandy road and then abruptly turned into a steep rocky incline. Approximately half of the group rode through the sandy area on the Fins and Things 4x4 Jeep Route and up the marked rocky incline to the top. This area was clearly marked as being part of the route and had markings placed upon the rocky surface by the BLM and/or Grand County, Utah, indicating that is was the marked route and in addition there were signs posted on the edge warning that outside of the route was closed and only the marked route could be used for motorized vehicle traffic.

25. When Mark Hale drove to the edge of the sandy road to the beginning of the rocky incline, he indicated that he would like some assistance in traveling up the rocky incline. I walked over to Mark Hale and because of his need for assistance and his uncertainty, I sat on the front of his 4-wheeler while other members of the party explained to him to go slow and to follow the route as marked.

26. At this point I was still under the assumption that Mark Hale knew how to operate an ATV and that he would travel up the marked route in a slow and safe manner. I had not observed or had any indication that Mark Hale had operated an ATV in a negligent manner or was a dangerous and had not seen him doing anything unsafe or dangerous during our two hours that day.

27. As I sat on the ATV, Mark Hale drove on the sand until the front wheels of

his ATV made contact with the rocky incline. At this point Mark Hale, for some negligent reason, caused the ATV to accelerate and lunge forward. The combination of the front wheels making contact with the steep incline and the great acceleration of the ATV caused me to be thrown from the ATV landing on the sandy road. The ATV being driven by Mark Hale then flipped over and landed on me causing severe pain and damage to my body.

28. Attached to my affidavit are five photographs that were taken at the time of the accident or immediately after the accident I've described. They are fair and accurate representations of the scene and the activities that followed the accident I've described. (See Exhibit B.)

29. In Exhibit B, the first photograph shows the route just seconds before Mark Hale accelerated, throwing me from the ATV and the ATV landing on top of me. The second picture shows my position on the sandy road after the ATV had been lifted from me. The third picture shows first aid being administered to me by emergency medical technicians lying in the same state as when the ATV had been lifted from me. The fourth picture shows the ambulance that drove directly to me and the law enforcement officer that responded to the scene. The fifth picture shows me being lifted from where I had been injured into the back of the ambulance to be transferred to the emergency room located in Moab, Utah.

30. When the ATV driven by Mark Hale landed on me, it caused severe injuries to my body specifically, but not limited to:

    a. Causing three fractures to my pelvis and one to my sacrum;

    b. My lumbar spine was fractured in eight areas and four of my ribs were broken;

    c. My right arm and wrist were broken, which ultimately required significant surgery.

31. Because my injuries were so severe, I was transported to the University of Utah for more surgery and treatment. Part of my surgery required that four screws and a plate were placed in the radius of my arm with nine smaller screws to stabilize it. Three more screws were placed in my arm to hold my ligaments in place and three pins were inserted through my wrist in an attempt to stabilize it. Because of my severe

injuries I had to spend a more than a week in the hospital with significant therapy and treatment after I was released. The injuries have left me with permanent injuries and extensive medical bills.

32. Because of the injuries caused to me by the ATV ridden by Mark Hale, I incurred medical bills in excess of $90,000.00 and have lost over $30,000.00 from my business as a chiropractor. Additionally, I have been told I will need further surgery on my wrist in the future and the wrist may ultimately need to be fused limiting or incapacitating my ability to work in my profession as a chiropractor.

33. After the accident I was informed that the ATV driven by Mark Hale was not covered by any type of liability insurance and was an insured motor vehicle.

34. Prior to the accident, myself and my wife Susan Hale, had obtained uninsured motor vehicle insurance through Allied Insurance. We purchased uninsured motor vehicle insurance on our four vehicles. With each vehicle carrying uninsured motorist insurance in the amount of $100,000.00 for each person.

35. After the accident, I made claim to Allied Insurance for the uninsured motorist coverage benefits and my claim was denied by Allied Insurance.

36. It is my understanding and belief that Allied Insurance denied my uninsured motorist coverage stating that the route that I was injured on was not a public road.

37. Attached to my affidavit are true and accurate letters that I received from the Defendants in this matter regarding their position on coverage.

38. I swear under oath and treat of perjury that the foregoing is based upon my personal knowledge and is true and correct.

DATED this _10_ day of September, 2010.

_____
VAN L. HALE

STATE OF WYOMING      )
                      ) ss
COUNTY OF LINCOLN     )

SUBSCRIBED AND SWORN to me this 10th day of September, 2010, by VAN L. HALE, who personally appeared before me and attested that the above was true and correct.

WITNESS my hand and official seal.

*Heidi Brown*
NOTARY PUBLIC

My commission expires: 8-5-2013

> HEIDI BROWN   NOTARY PUBLIC
> County of Lincoln   State of Wyoming
> My Commission Expires August 5, 2013